**In re DECEMBER NINE
COMPANY, LTD.**

No. 08–06–00225–CV.

Court of Appeals of Texas,
El Paso.

Dec. 7, 2006.

Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for Relator.

J. Perry Pinon, El Paso, for Interested Party.

Before CHEW, C.J., McCLURE, J., and BARAJAS, C.J. (Retired)

## OPINION ON PETITION FOR WRIT OF MANDAMUS

DAVID WELLINGTON CHEW, Chief Justice.

In this original proceeding, Relator December Nine Company, Ltd. ("December Nine") seeks a writ of mandamus from the trial court's order denying its motion to compel arbitration. We conditionally grant mandamus relief.

December Nine, doing business as PeopleCare, operates several group residential homes licensed by the State of Texas as inpatient mental health facilities. Christopher Estrada and Irma Daher were employees of December Nine and worked in its "House 8" facility located in El Paso. Mr. Estrada was employed as a direct support assistant, caring for one patient, while Ms. Daher was employed as a personal support assistant, caring for five patients. In August 2005, Mr. Estrada and Ms. Daher were disciplined, suspended, and discharged from the facility. Subsequently, they filed a wrongful discharge suit against December Nine, alleging their termination was in retaliation for reporting illegal activities to their supervisors, an administrator, and the Texas Department of Disabled Services, in violation of TEX. HEALTH & SAFETY CODE ANN. § 161.134. Specifically, Mr. Estrada and Ms. Daher alleged they were retaliated against for reporting that patients were not being fed sufficiently and that they had observed a coworker who was partially clothed with a naked patient; and allegedly, in response, they were suspended and ultimately discharged.

December Nine filed an original answer and asserted as an affirmative defense that there existed a valid and enforceable arbitration agreement between the parties. December Nine filed a motion to compel arbitration and an amended motion, including as evidence the company's Alternative Dispute Resolution ("ADR") Program and the written acknowledgments of receipt executed by Mr. Estrada and Ms. Daher, along with an affidavit from James Bean, as the attesting custodian of records for December Nine. In supplemental replies, December Nine also introduced the American Arbitration Association ("AAA") National Rules for Resolution of Employment Disputes and a supplemental affidavit from Mr. Bean. In their response, Mr. Estrada and Ms. Daher challenged the enforceability of the alleged arbitration agreement and attached affidavits to their response, attesting that they did not recall signing the acknowledgment forms and did not understand the ADR Program document upon recent review. After a hearing on the motion, the trial court denied December Nine's motion to compel arbitration.

## MOTION TO COMPEL ARBITRATION

### Federal Arbitration Act

██ We first consider Mr. Estrada's and Ms. Daher's claim that December Nine failed to establish that the Federal

Arbitration Act ("FAA") applies. In its motion to compel arbitration, December Nine asserted that the arbitration agreement was governed by the FAA. The FAA applies to all suits in state or federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992)(orig. proceeding). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *In re Gardner Zemke Co.,* 978 S.W.2d 624, 626 (Tex.App.—El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; it only requires that commerce be involved or affected. *In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127 (Tex. 1999)(orig. proceeding).

Here, the arbitration agreement provides that arbitration will be administered by the AAA and conducted pursuant to the AAA Employment Due Process Protocol and under the National Rules for the Resolution of Employment Disputes. Further, the agreement states that any "award may be vacated or modified only on the grounds specified in the U.S. Arbitration Act or other applicable law." December Nine also introduced a supplemental affidavit from Mr. Bean, President of 212GP, Inc., the general partner of December Nine, in which he attested that House 8, also known as "New Hope Community Living VIII," is an Intermediate Care Facilities for Mental Retardation ("ICF/MR") and that all patients who receive services from ICF/MR facilities must be eligible for either federal Supplemental Security Income or be determined to be financially eligible for Medicaid. Further, Mr. Bean stated that House 8 accepts Medicaid reimbursements for the care its employees give to its patients and December Nine receives goods and services from outside the State of Texas, such as office supplies, furniture, and equipment to run its facilities.

■ Relying on *In re Nexion Health at Humble, Inc.,* 173 S.W.3d 67, 69 (Tex.2005) (orig. proceeding), December Nine assert that the employer/employee relationship between the parties involved interstate commerce because the facility where Mr. Estrada and Ms. Daher performed their duties received federal financial assistance through Medicaid. *See In re Nexion Health,* 173 S.W.3d at 69 (holding that Medicare payments made to relator on behalf of patient was sufficient to establish interstate commerce and the FAA's application). Mr. Estrada and Ms. Daher, however, assert that *In re Nexion Health* is distinguishable because unlike Medicare, Medicaid is a state medical assistance program that is funded by the federal government through the Social Security Act, but administered by the State of Texas. Although the State is technically the "payer" of Medicaid benefits, we do not agree that the Court's holding in *In re Nexion Health* is limited by this distinction. As previously discussed, the term "commerce" is broadly construed. *See In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d at 127. An employment relationship involving commerce, which encompasses contracts relating to interstate commerce, is a sufficient transaction to fall within the FAA. *In re Anaheim Angels Baseball Club, Inc.,* 993 S.W.2d 875, 877–78 (Tex.App.—El Paso 1999, orig. proceeding); *see also In re Big 8 Food Stores, Ltd.,* 166 S.W.3d 869, 880 (Tex.App.—El Paso 2005, orig. proceeding)(relationship between an employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce *as a matter of law and implicates commerce clause issues*). Regardless of the State's action as a conduit for the federal funds, it remains uncontroverted that De-

cember Nine received federal funds for providing care to patients in its House 8 facility. Mr. Estrada and Ms. Daher provided direct care services to December Nine's patients, for which the company received Medicaid reimbursements. Moreover, the purported arbitration agreement specifically states that it is governed by federal arbitration law. Thus, we conclude the employment relationship which existed between December Nine and Mr. Estrada and Ms. Daher, as its employees, was related to interstate commerce and the FAA applies.

### Standard of Review

A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig. proceeding). With respect to resolution of factual issues or matters within the trial court's discretion, we may not substitute our judgment for that of the trial court. *Id.* at 839–40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* at 840. We will not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the resolution of legal issues, our review is much less deferential. *Id.* A trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* When a trial court erroneously denied a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex.2002)(orig. proceeding).

### Existence and Scope of Arbitration Agreement

A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999)(orig. proceeding), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex.2002)(orig. proceeding). The law presumes the existence of an arbitration agreement and any doubts regarding the existence or scope of an agreement are resolved in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001)(orig. proceeding). Whether there is an enforceable agreement to arbitrate is a question of law that we review *de novo*. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If there is a valid agreement, then the burden shifts to the party opposing arbitration to raise an affirmative defense. *Id.; In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573.

Applying state contract principles, we must first determine whether a valid agreement to arbitrate exists. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App.—El Paso 2004, orig. proceeding); *see also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983)(primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument).

December Nine asserts the evidence established that both Mr. Estrada and Ms. Daher entered into an enforceable arbitration agreement with December Nine. The company introduced into evidence the written acknowledgments of Mr. Estrada and Ms. Daher, which both state:

> I hereby acknowledge that I have had an opportunity to review PeopleCare's Alternative Dispute Resolution Program and understand that my continued employment with PeopleCare beyond Au-

gust 15, 2004 constitutes my agreement to be bound by this process.

Mr. Estrada executed the form on March 17, 2005 and Ms. Daher executed the form on August 10, 2004.

The PeopleCare ADR Program states, in relevant part:

> Under the Procedure, you must first attempt to resolve any dispute arising from your employment or the termination of that employment internally through the Company management channels, and then with non-binding mediation. After that, certain disputes may be submitted for resolution by binding arbitration. This alternative dispute resolution process will be the exclusive process for resolving employment disputes covered by this Procedure. Hence, you and the Company are precluded from bringing or raising in court or another forum any dispute that was or could/have been brought or raised under the means set forth in this Procedure. [Emphasis in original].

> .    .    .    .    .

> [Following the open door policy and formal grievance procedure]. All employee concerns involving legal rights can be addressed through the mediation procedure. A claim involving a legal right is one protected by law that can be asserted in court or before an administrative agency. These claims can relate to contracts or covenants, torts, discrimination (whether based on sex, pregnancy, race, color, national or ethnic origin, age, religion, sexual orientation, mental or physical disability or other characteristics protected by statute), wrongful discharge, violations of confidentiality or breaches of trade secrets, on-the-job injuries and accidents, wages or other compensation, and/or violation of any federal, state, or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law.

> .    .    .    .    .

> If a dispute involving legal rights remains unresolved at the conclusion of the mediation process, either you or the Company may submit the dispute for resolution by final binding arbitration under the Procedure. The arbitration will be conducted pursuant to the American Arbitration Association ('AAA') Employment Due Process Protocol and under the National Rules for the Resolution of Employment Disputes of the AAA, as amended ('Rules'). These Rules are incorporated by reference into this Procedure.

■ In response to December Nine's motion to compel arbitration, Mr. Estrada and Ms. Daher introduced into evidence their respective affidavits in which they each attested that they did not recall signing the acknowledgment form, did not recall reading the ADR Program prior to filing the lawsuit, and upon recently reading that document, did not understand it. A party's signature on a written contract is "strong evidence" that the party unconditionally assented to its terms. *In re Bunzl USA, Inc.*, 155 S.W.3d at 209, *citing* 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 2.10, at 168 (Joseph M. Perillo rev., 1993). Mr. Estrada and Ms. Daher did not deny that they signed the acknowledgment form, but rather, only attested to not remembering signing these forms. We must agree with December Nine that their statements do not raise a fact issue as to the authenticity of the written instruments. *See Wheeler v. Security State Bank, N.A.*, 159 S.W.3d 754, 756–57 (Tex. App.—Texarkana 2005, no pet.) (party denying the execution of a document must file a verified denial, and in absence of a verified pleading, the document is received

into evidence as fully proved); *see also Gutierrez v. Rodriguez,* 30 S.W.3d 558, 562 (Tex.App.—Texarkana 2000, no pet.)(party need not prove the authenticity of the signors' signatures on the deeds where opposing party does not object and does not file a verified pleading of its contentions). Further, Mr. Estrada's and Ms. Daher's bare claim to not understand the ADR Program does not defeat the enforceability of the arbitration agreement. *See Nguyen Ngoc Giao v. Smith & Lamm, P.C.,* 714 S.W.2d 144, 146 (Tex.App.—Houston [1st Dist.] 1986, no writ)(Contract signor "must be held to have known what words were used in the contract and to have known their meaning, and he must also be held to have known and fully comprehended the legal effect of the contract."); *see also In re McKinney,* 167 S.W.3d 833, 835 (Tex. 2005)(orig. proceeding)("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms.").

Here, the signed acknowledgment forms notified Mr. Estrada and Ms. Daher of the company's ADR Program and each form states above the respective signatures that the party had an opportunity to review that Program. The ADR Program explicitly states the company's arbitration policy. Both Mr. Estrada and Ms. Daher continued their employment with the company after notification. An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law. *In re Dallas Peterbilt, Ltd., L.L.P.,* 196 S.W.3d 161, 163 (Tex.2006)(orig. proceeding). We conclude December Nine established the existence of an arbitration agreement between itself and Mr. Estrada and Ms. Daher.

Next, we consider whether the claim raised by Mr. Estrada and Ms. Dah-er falls within the scope of the arbitration agreement. Under the FAA, any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. *Prudential Secs. Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex. 1995)(orig. proceeding). "[A] court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.' " *Id., quoting Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990).

Mr. Estrada and Ms. Daher sued December Nine for wrongful discharge in violation of Tex.Health & Safety Code Ann. § 161.134. Mr. Estrada and Ms. Daher argue that their claim does not fall within the scope of the arbitration agreement because that alleged agreement is vague, ambiguous, and indefinite as to what is covered and what is not covered. They note that the agreement states, "[t]his alternative dispute resolution process will be the exclusive process for resolving employment disputes covered by this Procedure," but then fails to specify what is covered.

In relevant part, the agreement also states:

Not all employee concerns are appropriate for this Procedure. For example, the Procedure will not cover the following claims:

i. A claim for unemployment compensation benefits;

ii. A claim by the Company for an injunction or other equitable relief, including claims of unfair competition and the use or unauthorized disclosure of trade secrets or confidential information, for which the Company may pursue relief from a court; and

iii. A claim based upon the Company's employee benefits and/or welfare plans that contain an appeal proce-

dure or other procedure for the resolution of disputes under the plan.

However, the Procedure will cover any dispute about whether the employee concern is properly subject to the Procedure. It will also cover all those claims whether made against the Company, any of its affiliates, or its individual officers, directors, managers or shareholders (in an official or personal capacity).

Mr. Estrada and Ms. Daher argue that the agreement identifies and excludes some employee concerns, without identifying examples of concerns that are appropriate for arbitration, and further, by using the phrase, "[f]or example," the agreement fails to identify all legal right claims that are not covered by the agreement. However, the agreement explicitly and unambiguously states that "all employee concerns involving a legal right may be submitted to binding arbitration." The agreement identifies wrongful discharge and/or any violation of state law whether based on statute or common law, as claims involving a legal right that can be asserted in court or before an administrative agency. Thus, Mr. Estrada's and Ms. Daher's alleged claim falls squarely within the scope of the arbitration agreement.

■ Mr. Estrada and Ms. Daher also assert that December Nine "left itself some wiggle room to back out of the agreement," by "withholding information about what other legal right claims it was not agreeing to arbitration." If an employer retains the unilateral right to modify an arbitration plan, the consideration for the arbitration agreement is illusory. *Webster*, 128 S.W.3d at 230 n. 2. In reviewing the agreement, there is no provision that would enable December Nine to change the arbitration agreement unilaterally. To the contrary, the agreement states the ADR Program covers any dis-

pute as to whether the employee concern is properly subject to the Procedure. We find no merit to the claim that December Nine made an "indefinite offer." We conclude there exists an arbitration agreement between the parties and the allegations against December Nine fall within the scope of that agreement.

### Defenses to Arbitration

■ As an affirmative defense, Mr. Estrada and Ms. Daher claim the arbitration agreement is unconscionable for a number of reasons. Unconscionability involves two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d at 571. The burden of proving unconscionability rests on the party seeking to invalidate the arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d at 571; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

■ Mr. Estrada and Ms. Daher assert that under the agreement, December Nine unfairly retains too much control over its enforcement because the company failed to provide them with a copy of the ADR Program or the AAA rules and requires employees to ask the company for the AAA rules. Further, they point out that the agreement does not state they can review the ADR Program document at a later date and does not provide employees with the AAA address so that they can obtain the rules themselves. By their written acknowledgments, Mr. Estrada and Ms. Daher had an opportunity to review the ADR Program and no evidence suggests that they were forestalled from obtaining a copy of the Program. Moreover, the agreement expressly incorporates the AAA's National Rules for the

Resolution of Employment Disputes by reference. It also states, "[a] copy of the complete AAA Employment Mediation Rules may be obtained from the Company President or the Human Resources Department." We fail to see how having to request a copy of the incorporated Rules is so onerous a requirement as to amount to procedural or substantive unconscionability. Mr. Estrada and Ms. Daher also assert the agreement is unconscionable because their attorney in the litigation of this case is representing them on a contingency fee basis, but will not represent them if the case is arbitrated. We find this circumstance, if true, unfortunate but unrelated to the issue of whether the arbitration agreement itself is unconscionable.

▪ Next, Mr. Estrada and Ms. Daher argue the arbitration agreement is unconscionable because there is a likelihood that they will incur prohibitively expensive arbitration costs that will prevent them from pursuing their claims. Both the United States and Texas Supreme Courts have recognized that the existence of large arbitration costs could preclude litigants from effectively vindicating their statutory rights in an arbitral forum. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. While neither Court specified how detailed the showing of prohibitive expense must be, some specific information of future costs is required. *Green Tree Fin. Corp.*, 531 U.S. at 92, 121 S.Ct. at 522–23; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756.

With regard to fees, the arbitration agreement provides, in relevant part:

Fees. Any notice mailed to the Company for external mediation or arbitration shall be accompanied by a $125 filing fee, which shall be applied to the administrative fee assessed by AAA for access to its service. The Company agrees to pay all AAA administrative fees (except for the $125 paid by the employee) and the mediator's or arbitrator's fees and expenses. Provided, however, the employee may elect at any time to share the AAA administrative fees and the external mediator's or arbitrator's fees and expenses equally with the Company, and provided further, that it is an exception to the Company's policy that it will pay for the arbitrator's fees if a case is determined by the arbitrator to have been filed frivolously, or a case is filed with intent to harass. All other costs and expenses associated with any mediation or arbitration, including, without limitation, the party's attorneys' fees, will be borne by the party incurring the expense.

▪ Mr. Estrada and Ms. Daher assert they made a reasonable factual showing of the likelihood of incurring prohibitive arbitration costs because the arbitration agreement identifies AAA as the arbitration association that will conduct the arbitration and both the agreement and the AAA rules state the fees that will be charged. However, under the burden set forth in *Green Tree*, the party opposing arbitration must also make some showing of the prohibitive or excessive character of these future arbitration costs. *See Green Tree Fin. Corp.*, 531 U.S. at 91–2, 121 S.Ct. at 522–23; *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756. In this case, the only actual arbitration cost identified was the $125 administrative filing fee that must accompany the arbitration demand. At the hearing, counsel for Mr. Estrada and Ms. Daher argued that they are indigent and filed affidavits of inability to pay court costs to have their claims heard by the trial court. Their counsel argued that since they did not have the $175 to file the lawsuit, they certainly did not have $125 to file for

arbitration. However, as December Nine points out, pursuant to the arbitration agreement, the company as the party demanding arbitration in this instance, would be responsible for the $125 filing fee, not Mr. Estrada and Ms. Daher. Beyond the $125 filing fee, Mr. Estrada and Ms. Daher presented no other specific information that they will be charged excessive arbitration fees. We conclude Mr. Estrada and Ms. Daher failed to prove that large or otherwise excessive arbitration costs render the arbitration agreement substantively unconscionable. Moreover, contrary to their contentions, we cannot conclude that the arbitration agreement is unconscionable as a whole.

In sum, we conclude that there exists a valid enforceable arbitration agreement between the parties and the claim asserted by Mr. Estrada and Ms. Daher in their lawsuit against December Nine falls within the scope of that agreement. Further, Mr. Estrada and Ms. Daher failed to prove their affirmative defense to avoid enforcement of the arbitration agreement. Therefore, the trial court clearly abused its discretion by denying December Nine's motion to compel arbitration. We sustain December Nine's sole issue. A party erroneously denied the right to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is appropriate. *See Tipps,* 842 S.W.2d at 272–73.

Accordingly, we conditionally grant the writ of mandamus and direct the trial court to grant the motion to compel arbitration. *See* TEX.R.APP.P. 52.8(c). The writ will issue only if the trial court fails to do so.

BARAJAS, C.J. (Ret.)(Sitting by Assignment).