COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





IN RE: BORDER STEEL, INC.


 Relator.
§


 


§


 


§


 


§


 


§


 


 § 

 


No. 08-06-00308-CV



AN ORIGINAL PROCEEDING 


IN MANDAMUS

O P I N I O N


 Relator Border Steel, Inc. ("Border Steel") asks this Court to issue a writ of mandamus
against Respondent, the Honorable Patrick M. Garcia, Judge of the 384th Judicial District Court in
El Paso County, Texas. For the reasons that follow, we conditionally grant the relief requested.

FACTUAL AND PROCEDURAL BACKGROUND

 Real Party in Interest Mario Juarez was an employee of Border Steel, a non-subscriber under
the Texas Workers' Compensation Act. In February of 2001, Border Steel offered its employees an
independent "Employee Injury Benefit Plan" (the "Benefit Plan or the "Plan") to provide for lost
wages and medical care in the event of a work-related injury. The Benefit Plan was composed of
three documents: (1) a detailed explanation of the Plan ("the plan document"); (2) a condensed Plan
Summary, which was provided to all employees; and (3) a Waiver and Arbitration Agreement, (1)
which each employee was required to sign, (2) if he wished to participate in the Plan and be eligible to
receive benefits. (3) By signing the waiver, an employee irrevocably and unconditionally waived and
released all rights to sue Border Steel for personal injuries, damages, or death, arising out of the
negligence, including negligence per se, of Border Steel. Benefits received under the Plan were
declared to be the sole remedy for any damages, injuries, or death.

 The waiver contained a provision whereby Border Steel and the participating employee
agreed to submit all employment-related disputes, including personal injury claims, to binding
arbitration. The Arbitration Agreement incorporated all the arbitration procedures provided by the
Benefit Plan and the Plan Summary. The Plan document and the waiver both explained that, by
executing and agreeing to the terms of the waiver, an employee affirmatively acknowledged that he
was waiving his right to a jury trial on all claims covered by the Agreement. The procedures were
also outlined in several presentations which Border Steel employees attended in February and March
of 2001. Juarez elected to participate in the Plan.

 Juarez was injured on January 5, 2004, while in the course and scope of his employment at
Border Steel. Pursuant to the Benefit Plan, Border Steel paid Juarez short-term disability benefits
and his medical expenses related to the injury. On February 17, 2005, Juarez filed suit against
Border Steel, alleging that his employer negligently caused his injuries. After filing its original
answer and general denial, Border Steel moved to abate the lawsuit and compel arbitration, based
on the Agreement which Juarez had signed as part of his enrollment in the Employee Benefit Plan. 
In response to Border Steel's motion to compel, Juarez argued that the Agreement was not
enforceable.

 On April 6, 2006, following a hearing, the trial court denied the motion to compel arbitration,
without stating the grounds for the denial. The parties agreed to attend mediation in October 2006,
but were not able to come to a settlement. Border Steel then filed this proceeding in mandamus. 

 In a single issue, Border Steel argues that the trial court clearly abused its discretion by
denying the motion to compel arbitration. Juarez responded to Border Steel's Petition for Writ of
Mandamus, urging that the employer is not entitled to mandamus relief because: The Arbitration
Agreement was void under Tex. Lab. Code Ann. § 406.033(e); there was evidence upon which the
trial court could have concluded that the Agreement was fraudulently obtained; there was evidence
upon which the trial court could have concluded that the Agreement was illusory; there was evidence
that the employer's benefit program was unconscionable; and there was evidence from which the
trial court could have concluded that the FAA did not apply in this case. In addition, Juarez argues
that Border Steel is precluded from seeking enforcement of the Agreement by the doctrine of laches
and denies that he ratified the Agreement by accepting benefits under the Plan.

DISCUSSION A writ of mandamus will issue if the trial court has clearly abused its discretion and there is
no other adequate remedy at law. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. 
proceeding). With respect to resolution of factual issues or matters within the trial court's discretion,
we may not substitute our judgment for that of the trial court. Id. at 839-40. The relator must show
that the trial court could reasonably have reached only one decision. Id. at 840. We will not disturb
a trial court's decision, unless it is shown to be arbitrary and unreasonable. Id. With respect to the
resolution of legal issues, our review is much less deferential. Id. A trial court has no discretion in
determining what the law is or in applying the law to the facts. Id. Thus, a clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of discretion. Id.

 We will first consider Juarez's argument that Border Steel did not engage in interstate
commerce, so that the FAA does not govern the Agreement. In its motion to compel, Border Steel
asserted the FAA applies because: (1) The text of the Arbitration Agreement provides that the
Federal Arbitration Act governs the interpretation, enforcement, and judicial proceedings under the
Agreement; and (2) Border Steel's business involves interstate commerce.

 Absent certain exceptions not applicable to this proceeding, the FAA applies to all suits in
state or federal court, when the dispute concerns a "contract evidencing a transaction involving
commerce." Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (orig. proceeding). 
"Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. 
In re December Nine Co., No. 08-06-00225-CV, 2006 WL 3924098, at *1 (Tex. App.--El Paso Dec.
7, 2006, orig. proceeding). The FAA does not require a substantial effect on interstate commerce;
it only requires that commerce be involved or affected. Id. (citing In re L & L Kempwood Assocs.,
9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding)).

 The issue is not the extent to which the parties' dispute affects interstate commerce, but
whether their dispute concerns a transaction that affects interstate commerce. In re Big 8 Food
Stores, Ltd., 166 S.W.3d 869, 879 (Tex. App.--El Paso 2005, orig. proceeding). In other words, the
term "commerce," as it defines the boundaries of the FAA, is coextensive with Congressional
authority to regulate under the Commerce Clause of the United States Constitution. (4) Id. "'No
commercial enterprise of any kind which conducts its activities across state lines has been held to
be wholly beyond the regulatory power of Congress under the Commerce Clause.'" Id. (quoting
United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 553, 64 S. Ct. 1162, 1173 (1944)). 
Some of the activities that can serve as evidence of interstate commerce include headquarters located
in another state, transportation of materials across state lines, manufacture of parts in a different
state, billings prepared out-of-state, or interstate mail and telephone calls in support of a contract. 
Id.

 The Border Steel Benefit Plan Summary includes a recitation that the Agreement is governed
by the FAA and specifies that the participant employee agrees that the company is engaged in
interstate commerce. (5) The Plan Summary indicates that the company is involved in interstate
commerce by virtue of its "purchasing goods and services from outside Texas which are shipped to
Texas; utilizing the interstate mail, telephone and highway systems; operating facilities serving
people from various states; and recruiting and advertising outside Texas." In In re Big 8 Food
Stores, this Court determined that such language established that the employer was engaged in
interstate commerce and held that, absent evidence to the contrary, "the relationship between an
employer who is regularly engaged in activities related to interstate commerce and its employees is
affected by interstate commerce as a matter of law and implicates commerce clause issues." In re
Big 8 Food Stores, 166 S.W.3d at 880.

 In his response, Juarez argues there is no evidence of the indicators of interstate commerce
as listed above. Specifically, Juarez contends that the record shows that all Border Steel employees
worked in El Paso, and there is no evidence of employees working in any other state. We disagree
with Juarez's argument, both because the language in the summary clearly states that the company
is involved in interstate commerce and because, even if no Border Steel employee worked outside
the State of Texas, that fact alone would not preclude the company's affecting interstate commerce. 
There are numerous ways, independent of where employees perform their duties, for an entity to
affect interstate commerce. Miguel Isla, Border Steel's Human Resources Manager, represents that
the company's daily operations involve receipt of products from, and delivery of products to, points
outside of Texas. (6) This Court has also recognized that transportation of materials across state lines
and the use of interstate mail are activities affecting interstate commerce. In re Big 8 Food Stores,
166 S.W.3d at 879. Based on this record, the relationship between Border Steel and Juarez
unquestionably affected interstate commerce, and the FAA applies. See In re December Nine, 2006
WL 3924098, at *2.

 Having determined that the FAA is the governing statute in this case, we will address
Juarez's argument that the waiver is void and unenforceable because it violates the non-waiver
provision of Tex. Lab. Code Ann. § 406.033(e). The FAA provides that a written arbitration
agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract." See 9 U.S.C. § 2. This language represents a federal policy
favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary. In
re R & R Pers. Specialists, Inc., 146 S.W.3d 699, 703 (Tex. App.--Tyler 2004, orig. proceeding)
(citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927
(1983)). This section creates a body of federal substantive law of arbitrability applicable to any
arbitration agreement within the coverage of the FAA. Id. Under the Supremacy Clause of the
United States Constitution, U.S. Const. art. VI, cl. 2, the FAA "takes precedence over state
attempts, legislative or judicial, to undercut the enforceability of arbitration agreements." In re
Turner Bros. Trucking Co., 8 S.W.3d 370, 374 (Tex. App.--Texarkana 1999, orig. proceeding [mand.
denied]); accord, Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520 (1987); Tipps, 842
S.W.2d at 271. Therefore, the FAA preempts inconsistent state statutes. (7) In re Turner Bros.
Trucking Co., 8 S.W.3d at 374.

 The Texas Labor Code provides that any agreement by an employee to waive a cause of
action or any right described in section 406.033(a), (8) which is executed before the employee's injury
or death, is void and unenforceable. See Tex. Lab. Code Ann. § 406.033(e). (9) We have already
determined that the provisions of the FAA are applicable to this case, based on Border Steel's
interstate activities. Therefore, the FAA preempts the application of the Texas non-waiver provision
to prevent the enforcement of the Arbitration Agreement at issue here. (10) See Tipps, 842 S.W.2d at
271.

 We now turn to the merits of the motion to compel arbitration and the Arbitration Agreement.

 A party seeking to compel arbitration must establish the existence of a valid arbitration
agreement and show that the claims raised fall within the scope of that agreement. In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). The law presumes the existence of
an arbitration agreement, and any doubts regarding the existence or scope of an agreement are
resolved in favor of arbitration. Id. An agreement to arbitrate is valid and enforceable, unless some
ground exists at law or in equity for the revocation of any contract, such as fraud or
unconscionability. See In re McKinney, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam). State
contract law determines the validity of an arbitration agreement. In re Halliburton Co., 80 S.W.3d
566, 568 (Tex. 2002). Whether there is an enforceable agreement to arbitrate is a question of law,
which we review de novo. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). If
there is a valid agreement, then the burden shifts to the party opposing arbitration to raise an
affirmative defense. Id.

 Juarez raised several affirmative defenses to the enforceability of the Arbitration Agreement. 
He argues that the Agreement was obtained through the use of fraud and unconscionable means and 
that Border Steel's obligations under the Agreement and the Benefit Plan were illusory. Juarez also
argues that Border Steel's right to mandamus relief is barred by the doctrine of laches. We will
address each defense in turn.

 Juarez argues that the trial court did not abuse its discretion, because there is evidence in the
record on which the court could have concluded that the Arbitration Agreement was fraudulently
obtained. (11)
 To prove that the agreement was obtained by fraud, Juarez must show that: (1) a
material representation was made; (2) the representation was false; (3) when the representation was
made, the speaker knew it was false or made it recklessly, without knowledge of the truth, and as a
positive assertion; (4) the speaker made the representation with the intent that the other party should
act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered
injury. In re FirstMerit Bank, 52 S.W.3d at 758.

 Border Steel argues that there is no evidence that the Arbitration Agreement and Waiver was
fraudulently obtained, because the document which Juarez signed clearly stated:

 I acknowledge and agree that I have carefully read this Agreement, that I
understand its terms, and that I have entered into this Agreement voluntarily and
without duress, pressure or coercion from any person and without relying on any
promises or representation by [Border Steel] other than those contained in this
Agreement itself. I am not under the influence of alcohol or any other impairing
substance, nor am I under any mental incapacity that would affect me at the time of
signing the Agreement. I am aware of the consequence of signing this Agreement
and, to the extent that I have deemed necessary, I have consulted with an attorney. 
Finally I agree and acknowledge that signing this Agreement is not a condition of my
employment at [Border Steel].


(Emphasis in original). 


 In addition, the Arbitration Agreement states, "I acknowledge and understand that by
signing this Agreement I am giving up the right to a jury trial on all the claims covered by this
Agreement . . ." (bold in original).

 One who signs a contract is legally held to have known what words were used in the contract,
to have understood their meaning, and to have comprehended the legal effect of the contract. Id. at
878. As such, even proof of illiteracy does not relieve a contracting party of the consequences of the
agreement. Id. "Absent proof of mental incapacity, a person who signs a contract is presumed to
have read and understood the contract, unless he was prevented from doing so by trick or artifice." 
Vera v. North Star Dodge Sales, Inc., 989 S.W.2d 13, 17 (Tex. App.--San Antonio 1998, no pet.).

 Despite the language in the Waiver and Agreement, Juarez argues that the deposition
testimony of former Border Steel Loss Control Administrator Fernando Villagran is evidence that
the Agreement was obtained by fraudulent means. Villagran testified that, as a new Border Steel
employee, he was given a stack of employment documents, including the Employee Benefit Plan,
and was expected to sign them without time for review and without explanation. Juarez contends
this is the way the Plan was given to all employees.

 Juarez continues that it was Villagran's responsibility to meet with injured workers and that
Villagran's testimony indicated he did not understand what arbitration was and was unable to
educate workers on their rights and responsibilities under the plan. Villagran's duties included
keeping a log of expenses per employee accident at Border Steel, and he was the first person to check
a potentially-injured employee following an accident to determine whether the employee needed
medical care. He also tracked how many doctor's appointments an injured employee attended after
an injury, until the employee was either released from the doctor's care or determined to be
incapacitated.

 There is no indication that Villagran was involved in the informational meetings Border Steel
organized when the Plan was introduced. Villagran was not the person who presented the Plan to
Juarez, and he did not witness Juarez's signing the Agreement.

 Whatever Villagran's experience as a new Border Steel employee was, the record shows that
at the time Border Steel introduced its new Employee Benefit Plan to its employees, Juarez had been
working for the company for over twenty years. There is evidence that Juarez received information
about the new Plan from several "roll out" meetings. At the roll out meetings, the Benefit Plan was
explained via PowerPoint presentation, with Spanish translation, and written summaries in both
English and Spanish. The record does not show that a material misrepresentation was made to
Juarez regarding his rights under the Plan. There is no record that Villagran made any statement to
Juarez regarding the plan. Even assuming that Villagran misunderstood what arbitration was and
did not know that an employee gave up his right to a jury trial by agreeing to arbitrate disputes with
Border Steel, there is no record that Juarez relied on any statement made by Villagran when Juarez
agreed to the Plan. Therefore, Juarez did not show that the Agreement was obtained by fraud, and
the Arbitration Agreement is not unenforceable on that ground. (12)

 Juarez also argues that the Arbitration Agreement is unenforceable due to procedural
unconscionability. As an affirmative defense to an Arbitration Agreement, unconscionability
involves two potential aspects: (1) procedural unconscionability, which refers to the circumstances
surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which
refers to the fairness of the arbitration provision itself. See In re Halliburton Co., 80 S.W.3d at 571. 
The burden of proving unconscionability rests on the party seeking to invalidate the arbitration
agreement. Id.; In re FirstMerit Bank, 52 S.W.3d at 756.

 Juarez contends that the evidence of Border Steel's unconscionable methods in procuring the
Arbitration Agreement includes the fact that the Plan was presented to employees in presentations
that lasted thirty minutes or less. He continues that, during the meetings the PowerPoint presentation
was only provided in English and orally translated into Spanish by a non-certified translator. Finally,
he argues that the "cursory manner in which the Plan was placed before employees" is evidenced by
Fernando Villagran's lack of knowledge about arbitration, in addition to the employer's failure to
inform the employees about how the Agreement could be amended or terminated or how Plan
benefits would be affected in the event Border Steel entered bankruptcy.

 There is nothing in the record to indicate, and Juarez does not argue, that he lacked the
mental capacity to enter into the contract. As we have discussed, the language of the Agreement
provided that the employee voluntarily participated in the Plan and understood the consequences of
the Agreement. There is undisputed evidence that Border Steel provided a Spanish version of the
Waiver and Arbitration Agreement, which Juarez signed. It is also undisputed that, following his
injury, Juarez accepted benefits for medical expenses and disability payments under the Plan. 
Consequently, the fact that Juarez now contends that the terms of the Agreement were not
sufficiently explained or that he did not understand its consequences is immaterial to the validity of
his agreement to arbitrate. See In re Big 8 Food Stores, 166 S.W.3d at 878. Furthermore, assuming
for a moment that the Agreement were unenforceable, Juarez ratified it by accepting and retaining
benefits under the Plan following his injury. Id. (citing Land Title Co. v. F.M. Stigler, Inc., 609
S.W.2d 754, 756-57 (Tex. 1980), and Daniel v. Goesl, 161 Tex. 490, 341 S.W.2d 892, 895 (1960)).

 Juarez next argues the Agreement is unenforceable because the employer's obligations under
the Benefit Program were illusory.

 The Texas Supreme Court has held that a promise to submit employment disputes to
arbitration constitutes sufficient consideration for a return promise to do the same. J.M. Davidson,
Inc., 128 S.W.3d at 228 (citing In re Halliburton, 80 S.W.3d at 569). In other words, neither
promise to arbitrate is illusory, because both parties are bound by their respective promises to
arbitrate. See id. Furthermore, an agreement to arbitrate is not illusory, despite being formed in an
at-will employment relationship, if the promises to arbitrate do not depend on continued
employment. In re Halliburton, 80 S.W.3d at 569. The Arbitration Agreement which Juarez signed
expressly provided that the parties' obligations to arbitrate disputes would survive the employee's
termination from the company. The Agreement also provided that it would not be revoked or
modified except by "mutual consent" evidenced by a writing signed by both the employee and the
company. Therefore, the agreement to submit employment disputes to arbitration was not illusory
and is not unenforceable on that ground.

 Finally, Juarez argues that Border Steel's seven-month delay in filing its petition for
mandamus relief constitutes laches, barring Border Steel from relief by mandamus. Although
mandamus is a legal remedy, it is largely controlled by equitable principles. Rivercenter Assocs. v.
Rivera, 858 S.W.2d 366, 367 (Tex. 1993); In re SCI Tex. Funeral Servs., Inc., 198 S.W.3d 14 (Tex.
App.--El Paso 2006, orig. proceeding). One such principle is that equity aids the diligent and not
those who slumber on their rights. Rivera, 858 S.W.2d at 367. A party asserting the defense of
laches must show both an unreasonable delay by the mandamus petitioner and harm resulting from
the delay. Rogers v. Ricane Enters., 772 S.W.2d 76, 80 (Tex. 1989); Sanchez v. Hester, 911 S.W.2d
173, 177 (Tex. App.--Corpus Christi 1995, orig. proceeding).

 The trial court entered its order denying the motion to compel arbitration on April 6, 2006.
Border Steel filed its petition for mandamus relief on November 14, 2006. Juarez analogizes this
case to In re SCI Tex. Funeral Services, 198 S.W.3d 14, where this Court concluded that a six-month
delay constituted laches and prohibited the relator from seeking mandamus relief. The relator in that
case provided this Court with no explanation for the delay in filing its mandamus petition. Id. In
the case before us, Border Steel argues, and the record shows, that there was no unreasonable delay
in filing the petition, as the parties attempted to mediate the dispute through October 2006. Border
Steel filed its petition for writ of mandamus in the month following the unsuccessful mediation. In
addition, Juarez does not explain how the seven-month delay has resulted in harm to him. As Juarez
has failed to carry his burden on either element of his laches defense, it does not bar Border Steel's
right to mandamus relief.

 In conclusion, we find that a valid and enforceable Arbitration Agreement exists between the
parties. Juarez has not proven his affirmative defenses to avoid enforcement of the Arbitration
Agreement. Therefore, the trial court clearly abused its discretion by denying Border Steel's motion
to compel arbitration. We sustain Border Steel's sole issue. A party erroneously denied the right
to arbitrate under the FAA has no adequate remedy on appeal, and mandamus relief is appropriate. 
See Tipps, 842 S.W.2d at 272-73.

 Accordingly, we conditionally grant the writ of mandamus and direct the trial court to grant
the motion to compel arbitration. See Tex. R. App. P. 52.8(c). The writ will issue only if the trial
court fails to do so.

 KENNETH R. CARR, Justice

June 28, 2007


Before Chew, C.J., McClure, and Carr, JJ.

1. The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.
2. The "Waiver and Arbitration Agreement" ("Agreement" or "Arbitration Agreement") was available in English
and Spanish versions. Juarez signed the Spanish version on February 28, 2001.
3. Signing the Agreement was not, however, a condition of continued employment at Border Steel.
4. "The FAA 'extends to any contract affecting commerce, as far as the Commerce Clause of the United States
Constitution will reach.'" In re Nexion Health, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (quoting In re L & L Kempwood
Assocs., 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding)).
5. The Spanish version of the "Waiver and Arbitration Agreement," which Juarez signed, incorporates the
provisions in the Benefit Plan Summary, which specifies that the Agreement is governed by the FAA. The waiver also
asserts that Border Steel is engaged in interstate commerce.
6. For decades, the National Labor Relations Board has, with United States Supreme Court approval, based its
determination of whether to exercise federal jurisdiction over labor disputes on whether, inter alia, the employer
purchases goods directly from, or delivers goods directly to, points outside the state where the controversy arose. See,
e.g., 23 NLRB Ann. Rep. 8 (1958); cf. Local 438, Constr. & Gen. Laborers' Union v. Curry, 371 U.S. 542, 545 n.2, 83
S. Ct. 531, 534 n.2 (1963).
7. Cf. Southland Corp. v. Keating, 465 U.S. 1, 104 S. Ct. 852 (1984). That case arose under the California
Franchise Investment Law, Cal. Corp. Code §§ 31000 et seq., which provided certain protections to franchisee
investors. Section 31512 provided that "any condition, stipulation or provision purporting to bind any person acquiring
any franchise to waive compliance with any provision of this law or any rule or order hereunder is void." When certain
franchisees of Southland Corp. (7-Eleven Stores) sued the franchisor for alleged violations of the Investment Law,
Southland sought, under the franchise agreements, to compel arbitration. In reliance upon section 31512, the California
Supreme Court refused to compel the plaintiffs to resort to arbitration. See 31 Cal.3d 584, 183 Cal. Rptr. 360, 645 P.2d
1192 (1982).


 In Keating, the United States Supreme Court reversed, holding:


 In creating a substantive rule applicable in state as well as federal courts, Congress intended
to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. We
hold that § 31512 . . . violates the Supremacy Clause.


465 U.S. at 16, 104 S. Ct. at 861 (footnotes omitted).
8. Subsection (a) states:


 (a) In an action against an employer who does not have workers' compensation insurance
coverage to recover damages for personal injuries or death sustained by an employee in the course and
scope of the employment, it is not a defense that:

 (1) the employee was guilty of contributory negligence;

 (2) the employee assumed the risk of injury or death; or 

 (3) the injury or death was caused by the negligence of a fellow employee.


Tex. Lab. Code Ann. § 406.033(a).
9. Subsection (e) provides:


 (e) A cause of action described in Subsection (a) may not be waived by an employee before
the employee's injury or death. Any agreement by an employee to waive a cause of action or any right
described in Subsection (a) before the employee's injury or death is void and unenforceable.


Tex. Lab. Code Ann. § 406.033(e).
10. Insofar as we have been able to ascertain, only one other Texas court has considered the precise issue we are
asked to decide herein, to wit, whether, under these circumstances, Tex. Lab. Code Ann. § 406.033(e) is preempted by
the FAA. See In re R & R Pers. Specialists, Inc., 146 S.W.3d 699 (Tex. App.--Tyler 2004, orig. proceeding) (finding
Texas statute preempted by FAA). Consistent with her ethical obligations to the Court, counsel for Juarez called this
case to the Court's attention at oral argument, but urged us not to follow our sister court's conclusion. While we applaud
counsel's ethical behavior, we respectfully reject her request.
11. Several years ago, in In re Big 8 Food Stores, this Court was presented with similar arguments in defense
of a similar arbitration agreement in an employment context. In that case, the injured employee argued that an arbitration
agreement was the result of procedural unconscionability and was therefore unenforceable, because the employee did
not understand the implications of her agreement to arbitrate employment disputes. In re Big 8 Food Stores, 166 S.W.3d
at 877. In our decision that the employee was bound by her agreement to arbitrate, we explained:


 In determining whether a contract is unconscionable or not, the court must look to the entire
atmosphere in which the agreement was made; the alternatives, if any, which were available to the
parties at the time of the making of the contract; the non-bargaining ability of one party; whether the
contract is illegal or against public policy; and, whether the contract is oppressive or unreasonable. 
At the same time, a party who knowingly enters a lawful but improvident contract is not entitled to
protection by the courts. In the absence of any mistake, fraud, or oppression, the courts, as such, are
not interested in the wisdom or imprudence of contracts and agreements voluntarily entered into
between parties compos mentis and sui juris. Such parties to contracts have the right to insert any
stipulations that may be agreed to, provided they are neither unconscionable nor otherwise illegal or
contrary to public policy. It has accordingly been said that, almost without limitation, what the parties
agree upon is valid, the parties are bound by the agreement they have made, and the fact that a bargain
is a hard one does not entitle a party to be relieved therefrom if he assumed it fairly and voluntarily. 
A contract is not unenforceable on the ground that it yields a return disproportionate to the
expenditures in time and money, where there has been no mistake or unfairness and the party against
whom it is sought to be enforced has received and enjoyed the benefits.


In re Big 8 Food Stores, 166 S.W.3d at 877-78 (citing Marsh v. Marsh, 949 S.W.2d 734, 740 (Tex. App.--Houston [14th
Dist.] 1997, no pet.), and Wade v. Austin, 524 S.W.2d 79, 86 (Tex. Civ. App.--Texarkana 1975, no writ)).

12. Border Steel argues, in part, that the parole evidence rule precludes the court's considering evidence contrary
to the unambiguous terms of the Agreement. Generally, extrinsic evidence is not admissible to vary or add to the terms
of an unambiguous agreement. See National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995). 
However, extrinsic evidence is admissible in cases where there are allegations of fraudulent inducement. See Gonzalez
v. United Bhd. of Carpenters & Joiners, 93 S.W.3d 208, 211 (Tex. App.--Houston [14th Dist.] 2002, no pet.). Because
Juarez argues that he was induced to enter into the contract by fraudulent and unconscionable means, we include extrinsic
evidence in our analysis.