NUMBER 13-08-412-CV



COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN RE: HOPE LUMBER & SUPPLY CO., L.P.


 


On Petition for Writ of Mandamus


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides


 Through a petition for writ of mandamus, relator, Hope Lumber & Supply Co., L.P.
("Hope"), seeks to compel the trial court to vacate its order denying Hope's motion to
compel arbitration. We conditionally grant the writ.

I. Background


 Real party in interest, Cirilo Licea, worked for Hope as a forklift driver. He was
injured in the course and scope of employment and filed a workers' compensation claim. 
He was later terminated. Licea brought suit against Hope alleging that he was discharged
in retaliation for filing a workers' compensation claim. See Tex. Lab. Code Ann. § 451.001
(Vernon 2006). Hope filed a motion to compel arbitration under the Federal Arbitration Act
("FAA") based on an arbitration agreement signed by Licea. The agreement provides, in
part:

 Under this policy, which is . . . binding upon the Company and the
employee(s), all claims and disputes a current or former employee within the
United States might have arising out of the employee's employment or
termination of employment . . . shall be resolved through binding arbitration.


The agreement further provides that Hope intends to submit to arbitration "to the fullest
extent permitted by law, all disputes an employee might have against the Company . . . ." 
The only claims not encompassed by the arbitration agreement are "those the employee
might have for workers' compensation benefits, unemployment compensation benefits, and
claims under any of the Company's qualified benefit or pension plans." 

II. FAA


 The FAA applies to transactions that involve commerce. See 9 U.S.C. § 2 (2005).
"Commerce" has been broadly defined and encompasses contracts relating to interstate
commerce. See In re Gardner Zemke Co., 978 S.W.2d 624, 626 (Tex. App.-El Paso
1998, orig. proceeding). The FAA does not require a substantial effect on interstate
commerce; rather, it requires commerce to be involved or affected. See L & L Kempwood
Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.), 9 S.W.3d
125, 127 (Tex. 1999) (orig. proceeding); In re Merrill Lynch Trust Co. FSB, 123 S.W.3d
549, 553 (Tex. App.-San Antonio 2003, orig. proceeding). 

 According to affidavit testimony proffered by Hope, Hope is a supplier of building
materials to professional builders, contractors, and consumers, and it operates in multiple
states across the nation. Absent evidence to the contrary, "the relationship between an
employer who is regularly engaged in activities related to interstate commerce and its
employees is affected by interstate commerce as a matter of law and implicates commerce
clause issues." In re Big 8 Food Stores, Ltd., 166 S.W.3d 869, 880 (Tex. App.-El Paso
2005, orig. proceeding). In the instant case, Licea contends that whether the FAA applies
is a premature question, but does not otherwise contest its application. Because we
conclude that the FAA applies, mandamus is the appropriate method of review.

III. Standard of Review


 A writ of mandamus will issue if the trial court has clearly abused its discretion and
there is no other adequate remedy of law. Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992) (orig. proceeding). We may not substitute our judgment for that of the trial court
with respect to the resolution of factual issues or matters within the trial court's discretion. 
Id. at 839-40. The relator must show that the trial court could reasonably have reached
only one decision. Id. The reviewing court cannot disturb the trial court's decision unless
it is shown to be arbitrary and unreasonable. Id. With respect to the trial court's decision
on legal issues, our review is much less deferential. Id. at 840. A trial court has no
discretion in determining what the law is or applying the law to the facts. Id. Thus, a clear
failure by the trial court to analyze or apply the law correctly will constitute an abuse of
discretion. Id. 

 When a trial court erroneously denies a motion to arbitrate under the FAA,
mandamus is the appropriate remedy. In re Halliburton Co., 80 S.W.3d 566, 573 (Tex.
2002) (orig. proceeding); see 9 U.S.C.A. § 4 (2005) (section 4 of the FAA provides, in part,
that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
under a written agreement for arbitration may petition . . . for an order directing that such
arbitration proceed in the manner provided for in such agreement").

IV. Validity and Scope


 A party seeking to compel arbitration by a writ of mandamus must (1) establish the
existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement
exists is a legal question subject to de novo review." In re D. Wilson Constr. Co., 196
S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which
are subject to the FAA, we generally apply state-law principles governing the formation of
contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). If the trial court finds there
is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove
his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the arbitration agreement covers the nonmovants' claims. In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine
whether an existing arbitration agreement covers a party's claims, a court must "focus on
the complaint's factual allegations rather than the legal causes of action asserted." Id. at
754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must
resolve any doubts about an arbitration agreement's scope in favor of arbitration. Id. at
753. If the arbitration agreement encompasses the claims and the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207
S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz
Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston
[14th Dist.] 2004, no pet.).

 In the instant case, Licea signed the agreement to arbitrate. Licea's arguments
below and on appeal do not deny the existence of this signed document. Accordingly, we
conclude that relator has established the existence of an arbitration agreement. Moreover,
given the breadth of the arbitration agreement requiring the arbitration of "all claims and
disputes," and Hope's express statement that it intends to arbitrate those disputes "to the
fullest extent permitted by law," we conclude that the claims at issue in this lawsuit fall
within the scope of this agreement. See, e.g., In re FirstMerit Bank, N.A., 52 S.W.3d at
754.

 V. Defenses


 Having concluded that a valid arbitration agreement exists and Licea's claims fall
within the scope of that agreement, we now turn our attention to Licea's alleged defenses
to arbitration. See In re H.E. Butt Grocery Co., 17 S.W.3d 360, 367 (Tex. App.-Houston
[14th Dist.] 2000, orig. proceeding); City of Alamo v. Garcia, 878 S.W.2d 664, 665 (Tex.
App.-Corpus Christi 1994, no writ). 

 Licea asserts that the trial court did not abuse its discretion in refusing to compel
arbitration because: (1) his claim for retaliatory discharge did not fall within the scope of the
agreement; (2) the agreement to arbitrate is too indefinite; (3) the agreement is
unconscionable; (4) the agreement is illusory because Hope can avoid the mutuality of
obligation by termination of its employees; and (5) Hope waived its right to arbitration
because it terminated Licea.

 We have already concluded that Licea's claim for retaliatory discharge fell within the
scope of the arbitration agreement, and, accordingly, need not further address this issue
herein.

A. Indefiniteness


 Licea contends that the arbitration agreement is too indefinite to show a meaningful
agreement to arbitrate Licea's claims for retaliatory discharge. An order to arbitrate under
the FAA should not be denied unless it can be said with positive assurance that the
arbitration agreement is not susceptible to an interpretation that covers the asserted
dispute. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83
(1960); Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex. App.-Houston [1st Dist.]
1997, orig. proceeding). Any doubts concerning the scope of arbitrable issues should be
resolved in favor of arbitration. Hou-Scape, 945 S.W.2d at 205. 

 In the instant case, the agreement expressly requires arbitration of "all claims and
disputes a current or former employee . . . might have arising out of the employee's
employment or termination of employment." Thus, we hold that this language evinces a
"meaningful agreement" and is sufficiently certain to show that Licea's claim for retaliatory
discharge lies within the scope of the arbitration provision and is subject to arbitration.

B. Unconscionability 


 Licea contends that the arbitration agreement is unconscionable because the cost
of arbitration has not been determined and the arbitrator has "unfettered discretion in
assessing costs against the employee." In connection with costs, the agreement provides:

 As a benefit to employees, the Company will pay all of the expenses and
fees of the arbitrator and the AAA's (or other arbitration service) arbitration
administrative costs with the following exceptions.


 [1] $100 of the fee required by the AAA (or other arbitration service) for
an employee or former employee to initiate the arbitration process.


 [2] Any fees, expenses, costs or charges that the arbitrator, at his or her
sole discretion, may require the employee or former employee to pay. 
The arbitrator will consider the relative merit of the complaint(s) and
the income level of the employee or former employee among many
factors in making such determination.


Both the United States and Texas Supreme Court have recognized that the existence of
large arbitration costs could preclude litigants from effectively vindicating their statutory
rights in an arbitral forum. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000); In
re FirstMerit Bank, N.A., 52 S.W.3d at 756. While neither court specified how detailed the
showing of prohibitive expense must be, the party opposing arbitration must prove the
likelihood of incurring such costs and produce some specific information substantiating the
alleged costs. Green Tree Fin. Corp., 531 U.S. at 90; In re FirstMerit Bank, N.A., 52
S.W.3d at 756; see In re December Nine Co., 225 S.W.3d 693, 702 (Tex. App.-El Paso
2006, orig. proceeding).

 Licea has provided no evidence regarding the alleged costs of the arbitration or his
ability, or lack thereof, to pay such costs. Because the record contains no specific
evidence that Licea will actually be charged excessive arbitration fees, we conclude that
there is legally insufficient evidence that the arbitration agreement is unconscionable based
on excessive costs. In re FirstMerit Bank, N.A., 52 S.W.3d at 757; In re December Nine
Co., 225 S.W.3d at 702.

C. Termination


 Licea contends that "the arbitration agreement is illusory because [Hope] did avoid
the mutuality of obligation by terminating the employee." In a similar vein, Licea argues
that Hope waived its right to arbitration because it terminated Licea.

 An arbitration agreement may be illusory if a party can unilaterally avoid the
agreement to arbitrate. See In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex.
2006) (orig. proceeding); D.R. Horton, Inc. v. Brooks (In re D.R. Horton), 207 S.W.3d 862,
867 (Tex. App.-Houston [14th Dist.] 2006, orig. proceeding) ("An illusory promise is one
that fails to bind the promisor because he retains the option of discontinuing performance
without notice."). 

 Contrary to Licea's argument, however, the arbitration agreement at issue is
expressly "binding" on Hope and applies to "current or former" employees arising from their
"employment or termination." Moreover, the agreement further provides that Hope
"reserves the right to change, modify, or discontinue this policy at any time upon at least
10 days' written notice to the Company's current employees, except that the terms of the
policy that are in place at the time a disputed action takes place are the terms which will
be binding on the Company and the employee or former employee." Accordingly, the
agreement at issue herein is not illusory and does not lack mutuality of obligation. See
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 230 (Tex. 2003); In re Halliburton Co.,
80 S.W.3d 566, 569-70 (Tex. 2002) (orig. proceeding). In this context, we note that the
agreement expressly provides that the policy "does not in any way alter the "at will" status
of the employee's employment," and iterates that nothing in the agreement limits either the
employee's right to resign or limits Hope from terminating the employee's employment "for
any reason at any time." Such language does not negate the existence of an arbitration
agreement. See, e.g., In re Tenet Healthcare, Ltd., 84 S.W.3d 760, 766 (Tex. 
App.-Houston [1st Dist.] 2002, orig. proceeding) (discussing the "at-will" employment
status and its relationship to an arbitration agreement). Thus, Hope did not waive
application of the arbitration agreement by terminating Licea. 

 In conclusion, Hope did not retain a unilateral right to terminate or change the
provisions of the arbitration agreement, and accordingly, we reject Licea's arguments
otherwise.

VI. Conclusion


 We conditionally grant Hope's petition for writ of mandamus and direct the trial court
to compel arbitration. We are confident that the trial court will promptly comply, and our
writ will issue only if it does not.


 __________________________

 GINA M. BENAVIDES

 Justice


Memorandum Opinion delivered and

filed this the 29th day of August, 2008.