

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00397-CV

**NABORS WELLS SERVICES, LTD.**
**D/B/A NABORS INDUSTRIES,**                                    **Appellant,**

**v.**

**LUCIO HERRERA,**                                             **Appellee.**

### On appeal from the County Court at Law No. 1
### of Hidalgo County, Texas.

## NUMBER 13-08-00451-CV

## IN RE NABORS WELLS SERVICES, LTD.
## D/B/A NABORS INDUSTRIES

### On Petition for Writ of Mandamus
### and Motion for Temporary Relief and Temporary Order.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

Through a petition for writ of mandamus filed in Cause No. 13-08-00451-CV and an interlocutory appeal filed in Cause No. 13-08-00397-CV, relator, Nabors Wells Services, Ltd. d/b/a Nabors Industries ("Nabors"), seeks to compel the trial court to vacate its order denying Nabors's motion to compel arbitration. We dismiss the appeal and conditionally grant the petition for writ of mandamus.

## I. Background

Lucio Herrera, the real party in interest, is a former employee of Nabors. When Nabors hired Herrera, it furnished him with a copy of the "Nabors Dispute Resolution Program and Rules" (the "Program"). The Program established a procedure for resolving disputes arising from the employer-employee relationship through the use of arbitration. Herrera executed an "Employee Acknowledgment Concerning Nabors Dispute Resolution Program," reflecting his receipt of and agreement to comply with the Program.

Herrera subsequently left his job at Nabors and sued Nabors for retaliation, discrimination, intentional infliction of emotional distress, sexual harassment, and invasion of privacy. Nabors answered the suit, then filed a motion to compel arbitration supported by copies of the Program, Herrera's execution of the Acknowledgment, and the affidavit of Frank M. Labrenz, the vice-president of personnel resources at Nabors.

In his written response to the motion to compel, Herrera argued the arbitration agreement was unenforceable because: (1) the agreement was illusory; (2) the terms of the agreement were indefinite; (3) the agreement was substantively unconscionable because it gives Nabors the sole right to identify the arbitrators; and (4) the agreement

2

deprives Herrera of "an equivalent and accessible forum" in which to vindicate his employment rights. Herrera's response did not otherwise deny the allegations in Nabors's motion to compel arbitration.

The trial court held a non-evidentiary hearing. Nabors argued the parties had a valid arbitration agreement and that Herrera's claims and causes of action against it fell within the scope of the agreement. Herrera did not deny the existence of a written arbitration policy or dispute that his claims fell within the scope of the Program. Instead, Herrera argued that the arbitration agreement was illusory and unenforceable because Nabors could terminate or modify the Program at any time and in its sole discretion.

The trial court denied arbitration. The trial court's order did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 and Supp. 2008) (TAA). Therefore, Nabors seeks review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings).

## II. FAA

The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate

3

commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.–San Antonio 2003, orig. proceeding).

According to affidavit testimony proffered by Labrenz, Nabors is a Texas limited partnership with operations in several states, including Alabama, Arkansas, California, Colorado, Oklahoma, Texas, and Wyoming. Absent evidence to the contrary, "the relationship between an employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.–El Paso 2005, orig. proceeding). Moreover, the Program itself expressly provides that it is governed by the FAA. Thus, we hold that the FAA governs our analysis of the arbitration agreement at issue herein.

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (section 4 of the FAA provides, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding).[1]

---

[1] The San Antonio Court of Appeals has considered whether to compel arbitration of a former employee's claims against his employer under the same arbitration program as was utilized by Nabors in the instant case. *See Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding). The court therein concluded that the program constituted a valid arbitration agreement that covered the former employee's claims, and in the an absence of any defense to enforcing the agreement, the

4

Accordingly, we dismiss Nabors's interlocutory appeal and consider the merits of its petition for writ of mandamus.

## III. Standard of Review

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, 51 Tex. Sup. Ct. J. 1302, 2008 Tex. LEXIS 759, at *6 (Tex. Aug. 29, 2008) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

## IV. Validity and Scope

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in

---

trial court erred in not compelling arbitration. *See id.* Relator contends that this case should control our analysis of this matter; however, given the differing legal arguments and evidentiary postures of the two cases, we consider this opinion as instructive, but not controlling, of our analysis herein.

dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, the Program provides, in part:

The Program is designed to provide a means for the quick, fair, accessible, and inexpensive resolution of Disputes between the Company and the Company's present and former Employees and Applicants for employment, related to or arising out of a current, former, or potential employment relationship with the Company. The Program is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms.

. . . .

"Dispute" means all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Program or by an agreement to resolve Disputes under the Program . . . , including, but not limited to, any matters with respect to:

1. this Program;

2. the employment or potential re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;

. . . .

4. any other matter related to or concerning the relationship between the Employee and the Company including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; workers' compensation retaliation; defamation; infliction of emotional distress, antitrust claim concerning wages or otherwise, or status, claim or membership with regard to any employee benefit plan;

The Program expressly provides that it applies to "any" dispute, except as provided therein, and states that "[a]ll Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules." Herrera signed an acknowledgment regarding the Program in which he averred that "I acknowledge and understand that I am required to adhere to the Dispute Resolution Program and its

7

requirement for submission of disputes to a process that may include mediation and/or arbitration."

Herrera's arguments below and on appeal do not deny the existence of the Program or his acknowledgment thereof, nor does he argue that his claims fall outside the scope of the Program. Accordingly, we conclude that relator has established the existence of an arbitration agreement, and, given the breadth of the arbitration agreement, the claims in this lawsuit fall within the scope of this agreement. *See, e.g.*, *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754.

## V. Defenses

Having concluded that a valid arbitration agreement exists and Herrera's claims fall within the scope of that agreement, we now turn our attention to Herrera's alleged defenses to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ).

### A. Illusory

Herrera contends that the arbitration agreement "is illusory because Nabors can unilaterally terminate the program without notice" to him. An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See Palm Harbor Homes, Inc.*, 195 S.W.3d at 677; *D.R. Horton, Inc.*, 207 S.W.3d at 867 ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice."). In the instant case, relevant provisions of the Program provide:

6. Amendment

    A.    This Program may be amended by [Nabors] at any time by giving at least 10 days' notice to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed.

    B.    [Nabors] may amend the Rules at any time by serving notice of the amendments on AAA [American Arbitration Association], and JAMS [Judicial Arbitration and Mediation Services]. However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules unless otherwise agreed.

7. Termination

This Program may be terminated by [Nabors] at any time by giving at least 10 days' notice of termination to current Employees. However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agreed.

Contrary to Herrera's argument, the agreement at issue herein is not illusory. *See J.M. Davidson, Inc.*, 128 S.W.3d at 230. The Texas Supreme Court has rejected this argument under similar circumstances. *See Halliburton*, 80 S.W.3d at 569-70. Nabors's right to amend or terminate the Program is qualified: any amendment or termination of the arbitration agreement is subject to ten days' notice to the employee and is inapplicable to arbitration proceedings that have already been initiated. As such, the promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable. *Kellogg*, 80 S.W.3d at 616 (holding that an agreement to arbitrate was not illusory when it could be amended or terminated by giving at least ten days' notice and such amendments would not apply to a dispute for which proceedings had been initiated); *see Nabors Drilling USA, LP*, 198 S.W.3d at 248-49 (reaching the same result based on the same language as in the instant

case).  Nabors did not retain a unilateral right to terminate or change the provisions of the arbitration agreement, and accordingly, we reject Herrera's arguments otherwise.

## B.  Indefiniteness

Herrera contends that the arbitration agreement is too indefinite to show a meaningful agreement to arbitrate his claims.  Arbitration agreements are interpreted under traditional contract principles.  *See J.M. Davidson, Inc.*, 128 S.W.3d at 227.  An ambiguity exists only if the contract language is susceptible to two or more reasonable interpretations.  *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  If the written instrument can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.  *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

Herrera contends that the agreement to arbitrate omits essential terms because his acknowledgment does not specify the entity authorized to conduct the arbitration, the rules for selecting the entity, the procedure to be used in conducting the arbitration, or other matters pertaining to arbitration.  However, Herrera's arguments focus solely on the acknowledgment that he executed and fail to include reference to the Program itself.

The Program expressly states it "is intended to create an exclusive procedural mechanism for the final resolution of all Disputes falling within its terms," that "proceedings under the Program shall be the exclusive, final and binding method by which Disputes are resolved," and that "all Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules."  The Program's detailed "Rules" establish procedures for initiating arbitration, appointing an arbitrator, and handling the arbitration itself, including matters such as hearings, discovery, representation, the record,

evidence, post-hearing submissions, and closing the arbitration proceedings. The Program authorizes a trial court to enter a judgment on the arbitrator's award. The Program also provides for mediation under certain circumstances. The relevant provision provides: "At any time before the proceeding is closed, the Parties may agree to mediate their dispute by notifying AAA [American Arbitration Association], or JAMS [Judicial Arbitration and Mediation Services]. AAA or JAMS shall determine what procedures apply to any such mediation." The foregoing language indicates that Herrera's disputes must be arbitrated unless the parties agree to mediation and notify the designated organization in a timely manner. The acknowledgment that Herrera signed states that he "acknowledge[s] and understand[s] that [he] is required to adhere to the Dispute Resolution Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration."

Considering the Program in its entirety, the Program provides for the arbitration of Herrera's disputes in clear and definite language. Thus, we hold that this language evinces a "meaningful agreement" and is sufficiently certain to show that Herrera's claims fall within the scope of the arbitration agreement.

### C. Unconscionability

Herrera contends that the arbitration agreement is unconscionable (1) because it allows Nabors to unilaterally select the arbitrators, and (2) because the costs of arbitration have not been determined. We reject Herrera's contentions.

Contrary to Herrera's argument, the Program does not vest Nabors with the sole discretion to select the arbitrators. The arbitration agreement provides that AAA or JAMS will simultaneously send an identical list of persons chosen from a panel of qualified

11

arbitrators to each of the arbitrating parties, and each arbitrating party has fourteen days to strike any names objected to and renumber the remaining names in order of preference. Thus, the record fails to support Herrera's contention that the agreement is unconscionable because it allows Nabors to select the arbitrators.

Herrera also contends that the arbitration agreement is unconscionable because the costs of arbitration may be excessive for Herrera. Both the United States and Texas Supreme Court have recognized that the existence of large arbitration costs could preclude litigants from effectively vindicating their statutory rights in an arbitral forum. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *FirstMerit Bank, N.A.*, 52 S.W.3d at 756. While neither court specified how detailed the showing of prohibitive expense must be, the party opposing arbitration must prove the likelihood of incurring such costs and produce some specific information substantiating the alleged costs. *Green Tree Fin. Corp.*, 531 U.S. at 90; *FirstMerit Bank, N.A.*, 52 S.W.3d at 756; *see In re December Nine Co.*, 225 S.W.3d 693, 702 (Tex. App.–El Paso 2006, orig. proceeding).

As an initial matter, Herrera failed to present this argument to the trial court, and accordingly, it is not preserved for our review. *See* TEX. R. APP. P. 33.1. Moreover, even if Herrera had made this argument, the record is devoid of evidence regarding the alleged costs of the arbitration or Herrera's ability, or lack thereof, to pay such costs. Thus, because the record contains no specific evidence that Herrera would actually be charged excessive arbitration fees, there is legally insufficient evidence that the arbitration agreement is unconscionable based on excessive costs. *FirstMerit Bank, N.A.*, 52 S.W.3d at 757; *December Nine Co.*, 225 S.W.3d at 702. This issue is overruled.

D.  Equivalent and Accessible Forum

Finally, Herrera contends that the arbitration agreement is unenforceable because it deprives him of an "equivalent and accessible forum in which to effectively vindicate his employment rights" under the Texas Labor Code.  The Texas Supreme Court has recently analyzed arbitration agreements as they pertain to statutory claims:

> An arbitration agreement covering statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may "effectively vindicate his statutory rights."  Federal courts, analyzing the enforceability of arbitration provisions relating to federal statutory claims, have noted that such contracts are not enforceable when a party is forced to "forgo the substantive rights afforded by the statute," as opposed to merely "submit[ting] to resolution in an arbitral, rather than a judicial, forum."  In the context of federal claims, either an expression of federal intent to exclude certain categories of claims from arbitration, or the excessive waiver of statutory rights, may render a particular dispute un-arbitrable.  State courts, bound by the FAA under the supremacy clause, have more limited power, as the FAA preempts state laws that specifically disfavor arbitration.

*In re Poly-America, L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (citations omitted).  Herrera asserts that "insufficient information exists to determine all the ways in which the arbitration agreement in question may thwart [his] attempts to vindicate his rights under the Texas Commission on Human Rights Act . . . and Chapter 451.001 of the Texas Labor Code because of the agreement's indefiniteness."  Herrera only specifically complains, however, that the agreement is unenforceable because an arbitral forum deprives him of the right to a trial by jury.  Texas law does not prohibit a party from contractually waiving its constitutional right to a trial by jury.  *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 132-33 (Tex. 2004) (orig. proceeding); *In re Credit Suisse First Boston Mortg. Capital, L.L.C.*, 257 S.W.3d 486, 490 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding).  This

13

issue is overruled.

## VI.  Conclusion

In conclusion, having rejected each of Herrera's alleged defenses to arbitration, we conditionally grant Nabors's petition for writ of mandamus.  The stay previously imposed by this Court is lifted.  *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided.").  We direct the trial court to vacate its order denying arbitration and to issue an order compelling arbitration.  We are confident that the trial court will promptly comply, and our writ will issue only if it does not.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 27th day of January, 2009.